We'll hear an argument in Chambers versus School District of Philadelphia. Thank you, Your Honor. Mr. Tuttle. Good morning, Your Honors. May it please the Court, my name is Richard Tuttle. I represent the appellee, the School District of Philadelphia. I was going to begin my argument by quoting the same two sentences from A.W. that Judge Jordan read, so I will spare you that. Obviously, the importance of those two sentences cannot be missed. That holding essentially forecloses tort damages that the minor plaintiff seeks under Section 504 of the Rehabilitation Act. How about contract damages of the sort Mr. Burnish just described? You heard him lay out for us how, even under a contract analogy, one gets to the same spot in the plaintiff's view. Let me answer that in two ways. First of all, the authority he cites, and then general principles. He has spun gold out of straw in his reply brief, suggesting to the Court that there's a lot of authority out there for emotional injury damages in contract cases. We are confident that when the Court reads those cases, you will conclude as we do that there wasn't much there. As for his reliance, the appellant's reliance on the Eleventh Circuit case, the Sheely case, I believe, that was not an educational case. It was a public accommodation case. And to get to where they were going, they had to disavow, if you will, the plurality decision in Bowers, not Bowers, in Gorman, Barnes against Gorman, which this Court in A.W. essentially approved by citation to that opinion. So it's very notable that the appellants have not cited a single case since Gorman in 2002 in any educational setting, failure to provide a FAPE, where a federal court has awarded tort-like damages under 504 for failure to provide a FAPE. I agree, wouldn't you, that the district court's decision here that 504 had been abandoned was a misapprehension of what, whether there had been a concession by the plaintiffs? Yes and no. I think the language to which you pointed where counsel says, I don't really want to give this up, was fairly clear. But I don't think that that's necessarily enough to get him passed waiver. He didn't really argue it either. He was essentially saying, Judge, you figure it out whether I have a cause of action. We would suggest that that's not enough. They pleaded it. Yes. And the other thing that the district court cited to in the judge's opinion was remarks by defense counsel, not by plaintiffs' counsel. So I guess you could put it that way. Your Honor, we have argued our appeal with a clear understanding that you might conclude that it wasn't waived. So I leave that to your honors. It is certainly an argument to be made that it was not waived. So what do we do? Well, the reason that Judge Prater was absolutely correct in her holding was that the basis for that holding was, I am not going to recognize a claim for educational malpractice where it's so clearly not supported by any authority. She was looking at 1983, but her reasoning was equally applicable under Section 504 and the contract principle that the three of you each applied in A.W. And that principle is this, if you will. In this case, the minor plaintiff received a remedy of specific performance. Once that happened, the notion that she can then go back and plead again for tort damages or the benefit of the bargain after she's already been awarded specific performance violates every contract remedy principle that there is. Well, I guess I don't want to put words in Mr. Bernie's mouth, but I think he might say in response to that, yeah, they got awarded specific performance over and over and over and over and over again. And the school district, with remarkable impunity, over and over and over and over again, failed to perform as it was specifically ordered to perform. And therefore, to say they had specific performance is pretty hollow because at the end of the day, the chambers are left with a severely impaired daughter who did not get the education she was entitled to because the district was, whether you want to call it gross malfeasance, whatever you want to call it, they were not performing in accordance with multiple orders. So it's no answer to say they got specific performance. That's the pitch they're making to us. That's their substantive due process argument. What's your, I mean, how do you get past that factual record and say, hey, they got specific performance when you guys appeared not to have performed? Two responses. First, that the hearing officer went back the prior three years. And before that, at each turn, the plaintiffs in this case have had remedies. They came into district court in the early 90s with Judge Dalzell, I believe. They have plenary remedies in state court. If the school district is not providing the services that a hearing officer has ordered, that failure is actionable and has been actionable all along. Now, the hearing officer, the final decision which was never appealed, I'm unclear because the argument was certainly unclear as to what was awarded. Farron was given 38, 180 hours of compensatory time, which equals $209,000 in the trust fund, correct? Yes. Now, is that different from three years in a private school? Yes. Were told that oral argument, the district court was told, was $218,607? Yes, Your Honor. And Mr. Birney will correct me if I'm wrong. My understanding is that there was already an entitlement to education for a period of time, which was being provided, and that the hearing officer's award was a back for additional education, educational failures, if you will, which was compensated by compensatory education. Okay. Plus three years going forward in a private school. I guess at that point she would be too beyond the age at which they were required to do anything, correct? That's correct. That's what the statute says. Plus an aid. Now, we're told at 214 of the appendix there were total, the award totals something like $427,000. Is that correct? That's my understanding that that's correct, if you include the education that she was already getting. And then in addition, the compensatory education is added to that. Okay. The fundamental problem with trying to cram these tort remedies under 504 is that they don't fit. The nine members of this court, ten members of this court who said that the remedies we contemplate are the ones traditionally available for breach of contract were rendering a holding. That holding was necessary because the court had to conclude that there was a remedy available under 504 to be able to reach the further conclusion that a 1983 remedy was not available. So to declare that the kind of damages that they're looking for are available is a real stretch around the clearest precedent in the country after Barnes against Gorman establishing that the first thing we need to look at is what educational services can address the claim that has been made. Are they aggrieved? You say they're not, but I guess I'd like you to respond to Mr. Burney's argument that to hold they're not aggrieved under these circumstances renders IDEA hollow because then you could have a school district who repeatedly ignores orders and you can never adequately enforce it. Well, as I said, they are not aggrieved by the hearing officer's decision, and that's where the federal court jurisdiction arises. So in the terms of the statute, Section 1415, they're not aggrieved by the hearing officer's decision. How do they get enforcement? How do they get enforcement of a hearing officer's ruling in their favor if the school district just decides, and I know officers said that, but we're busy, we don't have money, we don't have staff, we don't have resources, we're not doing it? They go to Commonwealth Court and they ask the Commonwealth Court to give them an order enforcing the hearing officer's decision. And if the, so that is, that's their sole remedy in the district's view? I'm not sure I would be prepared to say that.  And they didn't take those steps here. And the failure to exhaust is a real problem for the appellants here because also on appeal they're advancing some more claims they want to make for, to recover expenditures. Would you agree that the exhaustion argument may take some chutzpah to make when you've got, what, seven or eight orders that they had to go back and get repeatedly because the school district wouldn't comply? The purpose of the argument really is to emphasize the statutory structure. This whole thing is consistent all the way across. That if you get your administrative remedy,  and the purpose of- What if the remedy is ordered but it's never given? You're putting the rabbit back in the hat when you say you get your administrative remedy. What if the remedy is ordered but you never get the remedy because the person ordered never gives it? I mean, that's the thrust of the argument that's being made to us. And the simple answer is that there are many remedies, but they don't involve going into federal court and seeking court-like damages. But isn't that what the hearing officer was remedying? Yes. Mr. Bernie said- At least for the past three years. They weren't. Yes. And that's what the final decision of the hearing officer was all about, remedying to the extent it's possible to remedy within the strictures of the IDEA the wrongs that had gone before. Yes. And it was never appealed. That's correct. And it's not my understanding. That's not what we're here about. That's right. We're not here about that remedy. We're not. This isn't- This claim, in essence, is the minute that I've been deprived of what I think is a fape, I have an inchoate right to go into federal court and file a tort claim about it. I maybe have to wait, but my tort claim has ripened. And that just isn't the law. What about their due process argument? It fails for a couple of reasons. I don't think they waived it, but they did because Judge Prater addressed it. I think that's pretty conclusive that if she didn't think they waived it, it would be difficult for this court to conclude that they did. But it suffers from at least two defects. One, there's been no recognition from any court, of which I'm aware, that says that failure to provide a fape is a deprivation of a fundamental right. So the 14th Amendment doesn't come into play at all. And Judge Prater was exactly correct that under the McCurdy standard, this isn't the kind of thing that targets the parent-child relationship. A failure to provide something isn't the same as interfering at seizing custody of a child, something like that, which is where the doctrine arose. Thank you very much. Thank you. Mr. Burney. May it please the Court in brief response. The first thing I want to point out to you is that the defendant suggested that somehow we're trying to spin gold out of straw by virtue of bringing this particular cause of action. But if you take that logic, then you'd also have to say that the 11th Circuit was apparently trying to spin gold out of straw, as well as the 9th Circuit in a case called Mark H. They all found that the types of damages that we're suggesting, emotional distress, bodily injury, are all available if you just simply use a contract analogy as your metaphor for purposes of understanding damages. The court also asked a question regarding the actual amount of the total award. And I want to make sure that this is very clear. Over the years, there were a variety of different orders awarding different amounts of compensatory education. There was three years that were ordered. Actually, there was three years and an additional 1,800 hours. So three years and an additional 1,800 hours that was awarded from 1992 to 2002 before hearing officer Mullally ever even issued her order for another two and a half years of compensatory education that got reduced down to about $200,000. So over the years, there was a huge amount of compensatory education that goes beyond simply the three years that is referenced in the record below, beyond simply what the hearing officer referenced, but there's also an additional 1,800 hours that's out there. Now, in terms of exhaustion, the chambers exhausted their remedies because they would get these awards. And they would turn to the school district. No, the final decision of the hearing officer. They would get a final decision of the hearing officer. Here, this one, the last one. The one that you didn't appeal. They would get that order as well as orders that preceded that in which they got awards for compensatory education. They would turn to the school district and they would say, okay, we've incurred these services. Please reimburse us. And the school district wouldn't do it. Well, what about the last order? The last order also wasn't fully complied with. Was it partially complied with? It was partially complied with after delay. Even the funding, there was about a six-month delay before that funding actually But you received the funding. We did receive the funding after a six-month delay. And you received the education in a private school. You received Well, that was also delayed. But you ended up getting it. Eventually we did. But there's a window of opportunity. Again, I need to emphasize there's a window of opportunity for children, especially children with autism, where you provide those intensive services and you can develop the speech and language services, the social services, or the social communication. That window is when they're very young, isn't it? Well, it continues over time. But really the real window is when they're very young. Well, I think the plaintiff's experts would say that the neuroreceptivity, the clinical term for that, is obviously important when they're still below teenage years. But it still continues through the teenage years. And obviously as you proceed into adulthood, which is now when the compensatory education, some of it is finally being given by the school district, you've essentially foreclosed a window of opportunity to allow Farron to be able to self-communicate, to say the basic things like, I love you to our mom. Well, the defendant seemed to be saying if you didn't like the compliance you were getting, you had enforcement available to you in the state courts. You could have gone and said, hey, they're not complying. Do something about this. And that those are things that weren't done. Instead, for reasons good and sufficient to the parents and their counsel at the time, decisions were made to try to work with the school district to try to get things taken care of without going to the state court for enforcement. But now having made those decisions, I take the defense argument to be, the parents can't go back and say, well, we were ill-used because we didn't get the benefit of the services we should have had since they didn't seek to enforce the orders along the path. What's your response to that argument? The response is several-fold. The first is that the school district referenced us going to the Commonwealth Court. I know of no way that we could have gotten to the Commonwealth Court to enforce these particular orders. The second thing is, we had order after order after order. Stop there, because this is significant, at least to me. Is the assertion that under Pennsylvania law, under Pennsylvania's system, because Pennsylvania has its own structure for enforcing the IDEA, right? Correct. That a hearing off, there's no mechanism in the state courts to enforce an administrative order of a hearing officer? I'm not suggesting that. What I am suggesting is that there are two ways. When you file an appeal from an administrative order, you can go to the Commonwealth Court or you can go to the federal courts. There was no reason to file an appeal. Every time we went and received compensatory education, we won. So there would be no purpose for filing an appeal from those orders. Not only did you win, you ended up getting compensated. Well, there are many orders where we've got an order in writing, but the parents have not been able to effectuate the remedy of that order. You had seven, as I counted, seven due process hearings over the years, right? There were many. That you brought. Yes. Yes, there were many. I can't stand here and say off the top of my head there were seven, but there were many. I can certainly think of at least six or seven that come to mind. So we couldn't simply go to the Commonwealth Court on this. Now, if they're suggesting that we could have filed an inaction in the Court of Common Pleas for this, if we have all of these orders, then our remedy is that every time we want to enforce the judgment, every time there's a violation of the order. So in other words, over a period of years, the chambers get services. They then present that to the district, and the district says, no, we're not going to pay this. So for every time they get a service, every day from every different provider, they then have to file a complaint in the Court of Common Pleas to effectuate that and hire an attorney to do that. That would be nonsensical. With all due respect, that would be nonsensical. Their only remedy at some point is to file an action in federal court for the violations, for the real damages that they suffer over a course of years as a result of this. I mean, I'm sure that's, I'm sure that that's the school district, that that's the remedy that the school district would want, because as a practical matter, then no parent would ever be able to enforce their rights, because it would just simply be too much for them. Thank you, Mr. Blaney. Thank you. We will take the case under advisement. Clerk will adjourn court. Please rise. This court stands adjourned until Tuesday, September 29, 2009 at 9.30 a.m.